GUSSERT and wife, Appellants, vs. GREEN BAY HOME BUILD-ING COMPANY, Respondent.

*March 9—April 7, 1942.*

*Thos. C. Dwyer* of Green Bay, for the appellants.

For the respondent there was a brief by *Minahan & Bassett* of Green Bay, and oral argument by *Roger C. Minahan*.

WICKHEM, J.   The principal question in this case relates to the sufficiency of the evidence to sustain the jury's findings in respect of the house painting.   Both parties appear to be satisfied with the trial court's disposition of the issues relating to the basement floor.   The facts, so far as material here, are as follows:

Plaintiffs, desirous of building a home, entered into a written contract with defendant corporation which engaged in the business of constructing homes.   By the terms of the contract defendant was to construct a house for plaintiffs for the agreed price of $4,450.   Defendant was to furnish all labor and materials and fully complete the house according to standard specifications attached to the contract.   The house was constructed and plaintiffs moved into it.   Shortly thereafter they noticed that the house paint was wearing off and peeling. Defendant's attention was called to the situation and according to the testimony of plaintiff, Roman Gussert, defendant promised to remedy the situation.   Sometime thereafter defendant repainted portions of the house but this paint job also peeled and cracked and, in general, failed to hold up.

On behalf of plaintiffs, two decorating and painting contractors testified.   The first testified that the foundation for the paint was not properly treated, and that this caused the coats of paint to chalk or peel.   He also testified that too much turpentine had been used in the paint, and that the chalking was also caused by inferior white lead.   He also stated that it was not a good policy to paint during the month of April because of the fact that the oil in the paint freezes and will not thereafter penetrate the wood.

The other contractor attributed the condition of the paint job entirely to the fact that defendant painted the house in

April when there was so much moisture in the wood that the process of drying would destroy the paint job.

Defendant's expert testified that the difficulty was wholly caused by the time of year at which the paint was applied, the moisture being so great as to break up the paint. A second expert for defendant expressed the same opinion, and neither of them attributed any of the fault to the materials or workmanship. One of them testified, however, that it was "poor judgment" to apply paint when the wood was wet.

It appears to us that there is evidence to support the jury's finding of a breach of contract.

One of plaintiff's witnesses stated in so many words that the materials gave evidence of being inferior in quality and that too much turpentine had been used with the paint. It is clear that the paint was put on when the wood was too wet; that it was poor judgment (which is poor workmanship) to attempt to paint at the time when the painting was done. It is true that the company agreed to complete all work by May 1, 1937, but there was a provision in the contract that delays caused by contingencies or conditions beyond defendant's control would operate to extend the time for completing the work. If a paint job that would comply with the contract could not be put on in April it should not have been attempted at that time.

The next question is whether there was an agreement between the parties that the repainting of the house had been accepted in lieu of any previous default by defendant. Defendant's testimony was: "Our understanding was that if we would repaint the north side of the house with two coats of paint that this would close the painting matter. Mr. Gussert accepted this proposition."

Plaintiff testified under cross-examination that when defendant offered to repaint the house he was satisfied with that offer. The question was then asked, "You accepted that as a compromise on your claim with reference to the defective

paint job?" The answer was, "Well, same understanding, I suppose, if the paint holds up. I didn't know whether it was going to hold up. I didn't sign any claim that I accepted it— wasn't any verbal—" "You asked Mr. Brightman to re-paint the house?" "Yes, sir." "And he did it?" "Yes, sir." "And you agreed to accept that because of the condition of the house?" "Yes, sir."

This is all the evidence that we have applicable to this issue and we think it falls far short of conclusively establishing an agreement to accept in full settlement of plaintiffs' claim a repainting, irrespective of its quality or remedial effect. Defendant had the burden of proof upon this issue and the jury was warranted in doubting that the agreement had such a scope. It follows that the trial court was in error in declining to enter judgment upon the verdict.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for the plaintiff upon the verdict.